IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 19-3333 WJ |
| | ) | |
| **MALCOLM TORRES**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits this Sentencing Memorandum for this Court's consideration in advance of Defendant's sentencing, which is set to occur on July 19, 2023, at 10:00 am. The United States herein asks this Court to accept Defendant's guilty plea to Second-Degree Murder of a Child contrary to 18 U.S.C. §§ 1152, 1111(a), and 3559(f)(1), accept the parties' agreement, and sentence Defendant to the custody of the Bureau of Prisons for 35 years, with a five-year period of supervised release to follow his release from custody.

## R.C. [1]

The United States has reviewed the Presentence Investigation Report authored by Senior United States Probation Officer Robert C. Sanchez. (Doc. 187). This comprehensive 24-page document is, by its very nature, focused upon Defendant. Officer Sanchez's report is intended to inform and assist this Court in determining the most appropriate and objective sentencing

---

[1] The United States continues to use the decedent's initials to identify her in filed pleadings, in compliance with Local Rule 57.5 ("Redaction of Personal Identifiers for Certain Persons"). The United States respectfully notes for this Court that a Google search for the phrase "'Malcolm Torres' and 'murder'" yields about 12,900 results, with the top results including R.C.'s full name in the title or body of the result. The United States nevertheless continues to comply with the plain language of Rule 57.5. The government moreover obtained permission from R.C.'s mother to include pictures of R.C. in this pleading. The United States does not interpret Rule 57.5 to disallow these images.

disposition in this case. Officer Sanchez's report certainly succeeds in that respect. However, because every criminal defendant is the logical focal point of every presentence report, it is incumbent upon the government to also inform the sentencing court about the party aggrieved by a given defendant's criminal conduct. *See* 18 U.S.C. § 3771(4), (8) (explaining that crime victims have the right to be heard at sentencing, as well as the right to be treated with fairness and respect throughout). The United States thus respectfully begins its Sentencing Memorandum by telling this Court about the child victim.

Throughout this case, the parties have filed pleading after pleading – 187 docket entries, to be exact – that have anonymously referred to the child victim as Jane Doe or R.C. The Plea Agreement states that Defendant killed Jane Doe, "a child," (Doc. 185, ¶ 8), but this child's identity has been rightfully excised and redacted from public filings. But Jane Doe's family, friends, and the Española community at large know Jane's Doe's true identity.






R.C. was born on Saturday, February 22, 2014. According to her mother, R.C. loved everyone. She hugged everyone she met and considered everyone to be part of her extended family. R.C.'s brother was among her best friends. R.C.'s mother recalls that R.C. and her young brother were "stuck to each other's hips." R.C. often built forts for the two of them. She would then carry her baby brother into the fort. She liked to dress her brother up in a cape and run with him around the family home.

Her favorite movie was Frozen. She enjoyed that movie so much that she wanted her hairdo to be just like that of the main character, Elsa of Arendelle. She also loved Sofia the First, another princess movie. She loved Barbie dolls, books, pink things, and dresses.

R.C. was partial to outdoor fun, including camping and fishing. She often wore American flag clothes, cowboy hats, and cowboy boots. She liked watching scary movies. R.C.'s mother remembers fondly how R.C. moved seamlessly from tomboy to girly girl.

R.C. loved to dance along with her mother as her mother cooked for them. Her favorite food was steak and mushrooms, and she sometimes indulged in powdered donuts. R.C. usually had Mister Bear, a stuffed animal, with her wherever she went. She loved Christmas time; her favorite song was Feliz Navidad.

R.C. died on September 7, 2019, when she was a little over five-and-a-half years old. Her family and friends continue to mourn her loss. Española artists painted a mural of R.C. (complete with Mister Bear) on a local fire station to honor her memory.



## SUBSTANTIVE FACTS

The United States concurs with the operative facts recited by Senior Probation Officer Sanchez. (Doc. 187, ¶¶ 10-26). The United States herein highlights and adds facts it believes important to this Court's sentencing determination.

**1. Report of the Office of the Medical Investigator.**

As part of this Plea Agreement, Defendant specifically agreed with the autopsy findings of the Office of the Medical Investigator (OMI). (Doc. 185, ¶ 9).[2] OMI Doctors Nicole Jackson and Karen Cline-Parhamovich performed the autopsy, after which they issued a 34-page death-investigation report. Though the report necessarily contains a litany of medical jargon, the report is clear enough to speak for itself. Phrases like "blunt head trauma," "fractured left wrist," "lethal compression of parts of the brain," and "traumatic injury" make clear to even the most unsophisticated reader that Defendant brutally beat R.C. to death.

---

[2] The United States attached the OMI report to the Plea Agreement.



*Dr. Jackson's notes, which depict the litany of injuries R.C. suffered.*

R.C.'s death was not the result of a one-time fall from a bed or similar piece of common household furniture. R.C. died because Defendant severely beat R.C. about her head. Defendant, however, did not localize his attack to R.C.'s head. Rather, R.C.'s neck, chest, back, buttocks, arms, and legs all evidenced cuts, scrapes, and bruises too. R.C.'s left wrist was broken. R.C. was dead before Defendant dropped her in the Rio Grande River.

### 2.  Report of Dr. Shalon Nienow.

As part of this Plea Agreement, Defendant agreed with the conclusions of Dr. Shalon Nienow regarding the cause of R.C.'s fatal injuries. (Doc. 185, ¶ 9).[3] Dr. Nienow is a renowned

---

[3] The United States attached Dr. Nienow's report to the Plea Agreement.

child-abuse pediatrician. She is division director of Child Abuse Pediatrics at Rady Children's Hospital-San Diego, medical director at the Chadwick Center for Children and Families, associate professor of pediatrics at the UC San Diego School of Medicine, and clinical director of Child Abuse Pediatrics at UC San Diego School of Medicine. The United States retained Dr. Nienow to determine whether R.C.'s injuries could have been accidental.

The United States provided Dr. Nienow with a comprehensive collection of discovery materials to examine. Careful examination of these materials led Dr. Nienow to conclude that R.C.'s countless bodily injuries and her fatal brain injury were inconsistent with a mere fall from a bed. Dr. Nienow reached this opinion by noting the sheer number of injuries R.C. had; R.C. suffered the injuries to multiple body planes; R.C.'s injuries were to areas of one's body that are ordinarily "relatively protected" (*e.g.*, neck, flank, chest, and abdomen); and R.C.'s injuries were severe. Dr. Nienow also determined R.C. had a broken left wrist, an injury Dr. Nienow described as "excruciatingly painful at the time that they are incurred and every time the bone is manipulated thereafter[.]" Defendant thus had to know, at the very least, R.C. had a painful wrist injury prior to her death, for which he chose not to seek medical care.

Dr. Nienow saw multiple injuries to R.C.'s head, which are inconsistent even to a lay person with a single tumble from a bed. Dr. Nienow also noted the type of injury R.C. suffered – one in which she suffered rapid acceleration and deceleration of her head – was not consistent with a simple fall.

**3. Defendant's total inability to acknowledge murdering R.C. prior to his guilty plea.[4]**

From the inception of this crime, Defendant actively attempted to deflect blame away from himself and onto others:

- Most obviously, he drove R.C. to the Rio Grande River and disposed of her dead body in that river.

- He told his grandparents that he called 911 to report R.C. missing, but that dispatchers told him R.C. had not been missing long enough to warrant police intervention.

- He said he searched for R.C. for less than an hour to no avail, after which he decided to get drunk and watch TV with his son.

- He refused to assist first-responding officers, instead choosing to drive to Dairy Queen, where he discussed with his mother thoughts of suicide or fleeing from justice.

- He provided zero assistance when police transported him back to the scene of the crime and begged him for information, disingenuously telling police multiple variations of the phrase "I want to find her just as much as you do."[5] Not only did Defendant provide false and misleading information to police, he also campaigned against the truthful efforts others made to assist police, such as by telling police that Shane Binion was wrong about the time that he saw Defendant the morning after the murder.

---

[4] The conduct listen herein supports Senior Officer Sanchez's proposed upward adjustment pursuant to U.S.S.G. § 3C1.1 ("Obstructing or Impeding the Administration of Justice"). (Doc. 187, ¶ 35). The United States supports this proposed adjustment, noting that prior to invocation of his right to remain silent, Defendant provided "materially false statements" to police "that significantly obstructed or impeded the official investigation or prosecution of the instant offense." Application Note 4(G) to U.S.S.G. § 3C1.1.

[5] Located at Bates no. 011518 (Serial 401), file name "AMBA0074.MP4."

- He did not permit police to search his phone the day after R.C.'s murder: [6]

  - o **Male officer:**      Would you be OK with us taking a look at your phone?
  - o **Defendant:**        No.
  - o **Male officer:**      Why not?
  - o **Defendant:**        Because it's my privacy.
  - o **Female officer:**    Not even if it's gonna help us find your daughter?
  - o **Defendant:**        Ain't nothing on there gonna help you find my daughter.

- While police and community members searched for R.C., Defendant denied having any involvement with R.C.'s disappearance. An Amber Alert was blasted out to every New Mexican with a cell phone on September 8, 2019. Defendant allowed the community to search frantically for R.C. until police discovered her body on September 11, 2019.

- Defendant has been in custody since on or about September 27, 2019. During his time in jail, Defendant has placed an extraordinary number of phone calls to his friends and family. The United States has diligently listened to these calls, cataloged these calls, and provided these calls to Defendant's attorneys. The common thread running through Defendant's communications is that Defendant is innocent and someone else killed R.C. Whether Defendant's friends and family truly believed Defendant or not, Defendant for years attempted to coax people who cared for R.C. into the false belief that R.C.'s killer was still at large.

---

[6] Located at Bates no. 011814 (Serial 402), file name "190908_0455 - Interview of Malcom Torres.MP3."

## SENTENCING-GUIDELINE COMPUTATION

Senior Probation Officer Sanchez calculated the applicable guideline range:

| ACTION | NUMBER | REFERENCE |
|---|---|---|
| Base Offense Level | 38 | U.S.S.G. § 2A1.2(a) (Second-degree murder) |
| Adjustment | +2 | *Id.* § 3C1.1 (Obstructing or impeding admin. of justice) |
| Adjustment | -3 | *Id.* § 3E1.1(a), (b) (Acceptance of responsibility) |
| Adjusted Offense Level | 37 | |
| Criminal History Category | IV | |
| Advisory Sent. Range | 292-365 mos. 24.3-30.42 yrs. | *Id.* § 5A |
| Adjusted Sent. Range | 360-365 mos. 30-30.42 yrs. | *Id.* § 5G1.1(c)(2) |

(Doc. 187, ¶¶ 30-40, 53). Because Defendant killed a child, his minimum term of imprisonment is 30 years. 18 U.S.C. § 3559(f)(1). And because that statutorily authorized minimum sentence is greater than the minimum of the guideline range, the applicable guideline range is 360 months to 365 months. U.S.S.G. § 5G1.1(c)(2).

Sanchez did not identify any factors warranting a departure from the applicable guideline range. (Doc. 187, ¶ 103). Sanchez agreed that this plea agreement may be warranted in this case. (*Id.* ¶ 105).

## ANALYSIS UNDER 18 U.S.C. § 3553(a)

In consideration of the following, the United Statas requests this Court sentence Defendant to 35 years in the Bureau of Prisons to be followed by a five-year term of supervised release.

**1. The nature and circumstances of the offense and Defendant's history and characteristics.**

A sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). This analysis "is aimed at

distinguishing among defendants who commit a particular offense or type of offense." *United States v. Irey*, 612 F.3d 1160, 1202 (11th Cir. 2010).

The United States will not rehash why the "nature and circumstances" of Defendant's crime warrant a 35-year prison sentence. Suffice to say, Defendant brutally killed a child in his care, disposed of that child's body, and then insisted to everyone actively searching for that child that she went missing of her own accord.

Defendant's criminal history is lengthy, beginning at age 13. (Doc. 187, ¶¶ 42-63). The United States raises this point not to ask this Court to punish Defendant for his juvenile record, but as a reminder that absolutely nothing has yet worked to deter Defendant from criminal conduct.

Many of Defendant's crimes involve alcohol (including this one). (*Id*. ¶¶ 48-50, 61-62). This should signal to this Court that nothing has proven effective to stop Defendant from consuming alcohol and committing crimes. Defendant's criminal history also includes crimes of violence directed at those he purports to care for (again, including this one). (*Id*. ¶¶ 55-58, 63). The community needs Defendant to be incapacitated, and Defendant desperately needs rehabilitative treatment for chronic alcohol abuse.

**2. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, adequate deterrence, and to protect the public from further crimes of Defendant.**

A significant sentence of imprisonment is necessary to reflect the seriousness of the crime of murder and provide adequate deterrence. Deterrence includes both general deterrence and specific deterrence. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). While general deterrence's goal is to "deter others from committing the same crime by demonstrating its disadvantageous consequences," the goal of specific deterrence is "to incapacitate the wrongdoer, so as to protect society from further criminal activity." *United States v. Irey*, 612 F.3d 1160, 1227

(11th Cir. 2010). An overly lenient sentence "signals to others that it is not a big deal to repeatedly defy United States' laws." *United States v. Corchado-Aguirre*, No. 15-2115, 2015 WL 6123216, at *3 (10th Cir. Oct. 19, 2015) (unpublished).

Defendant committed arguably the most heinous offense one can commit in our civilized society – he killed a defenseless child. New Mexicans must see that crimes of this extraordinary magnitude are punished with a prison sentence commensurate with the level of shock, horror, and emotional devastation these sorts of acts bring to a community. The impact of R.C.'s violent and untimely death were felt deeply in the Española community, receiving substantial media coverage throughout New Mexico and the United States. A sentence to 35 years in prison sends the unambiguous message to all who hurt children that their actions will not be tolerated – these offenders will be found, prosecuted, and punished. A 35-year prison sentence is also a powerful statement by New Mexico that our children are precious and their lives matter. And, of course, this sentence ensures Defendant will no longer be able to harm other females and children in the Española community.

### 3. The Sentencing Guidelines for the applicable category of offense committed by the applicable category of Defendant.

This Court must consider under 18 U.S.C. § 3553(a)(4) the sentencing range established by the United States Sentencing Commission for the applicable category of offense committed by the applicable category of defendant. The Supreme Court has recognized that even in the post-*Booker* world "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise…'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). "In the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve 3553(a)'s objectives.'" *Id*.

The applicable guideline range for this crime is 360 to 365 months (30 to 30.42 years). The proposed sentence of 420 months imprisonment (35 years) is outside this guidelines range; however, Defendant agreed to this sentence in exchange for the United States agreeing to forgo Count 1 (First Degree Felony Murder) of the Second Superseding Indictment, (Doc. 144), which carried a potential penalty of life imprisonment or death. 18 U.S.C. § 1111(b).

4. **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

This court must consider the need to avoid unwarranted sentence disparities among defendants situated similarly. 18 U.S.C. § 3553(a)(6). A sentence within the statutory limit accounting for the guideline range is the best approach to preventing unwarranted sentencing disparities between similarly situated defendants. The values of the justice system are undermined when there is substantial variance in sentences for similar offenses between judicial districts and even between individual judges in a single district. This factor is designed to avoid nationwide disparities in sentencing. *United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993).

Officer Sanchez noted an insufficient number of similarly situated defendants to which he could compare this proposed disposition. (Doc. 187, ¶ 106).

## <u>CONCLUSION & REQUEST FOR RELIEF</u>

Defendant should spend the next 35 years of his life in a federal prison for killing five-year-old R.C. The United States thus asks this Court to accept Defendant's guilty plea and the parties' agreement, sentencing Defendant to the custody of the Bureau of Prisons for 35 years, with a five-year period of supervised release to follow his release from custody.

*// SIGNATURE ON FOLLOWING PAGE //*

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

***Electronically filed on June 13, 2023***
JACK E. BURKHEAD
BRITTANY J. DUCHAUSSEE
ZACHARY C. JONES
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I hereby certify that on June 13, 2023, I filed the foregoing electronically through the CM/ECF System, which caused counsel for Defendant to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/*
Zachary C. Jones
Assistant United States Attorney